[Civ. No. 8754. First Appellate District, Division One.—May 12, 1933.]

MARY OSBURN KEHRLEIN, Appellant, v. BUILDERS MORTGAGE COMPANY (a Corporation) et al., Respondents.

Kimball Fletcher for Appellant.

Tanner, Odell & Taft for Respondents.

THE COURT.—This action was brought by plaintiff to restrain the sale of property under a second deed of trust and to recover the sum of $45,000 alleged to have been paid thereon by her. At the trial defendants objected to the introduction of any evidence upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and this objection being sustained a judgment dismissing said action was thereupon entered. From this judgment plaintiff appeals.

The complaint contains three counts, the first of which alleges that in 1925 Kathryn Elliott and Karl Elliott became associated in the building of a hotel in the city of Los Angeles; that in order to obtain the necessary funds to construct and furnish said hotel they executed first mortgage gold bonds, secured by deed of trust, for the sum of $280,000; that permit therefor was obtained from the commissioner of corporations; that it became necessary to raise an additional sum to complete and furnish the said hotel, and said parties arranged a further issue of securities to the amount of $100,000 to be secured by a junior deed of trust on said hotel. This second or junior deed of trust was executed to respondent Title Guarantee and Trust Company, as trustee, to secure notes aggregating $100,000. It recites an indebtedness of $40,000 to respondent Christ Thoren, and provides for securing loans from others from time to time. Then follows a list of notes for loans from others aggregating, with the Thoren indebtedness, something less than $100,000. It is further alleged that no permit was ever obtained from the commissioner of corporations for the issuance of any of the evidences of indebtedness covered by this second or junior deed of trust; that the said Elliotts were acting as promoters of the Normandie Corporation, organized in 1925, in the execution of the said deed of trust and in issuing the said evidences of indebtedness; that the execution of the deeds of trust and issuance of the evidences of indebtedness by the said Elliotts were for the sole benefit of the Normandie Corporation, and that the said evidences of indebtedness that were issued to said Kathryn Elliott or Christ Thoren were issued to said payees as agents of said Elliotts if the same were actually issued prior to the organization of said Normandie Corporation, or as agents of said corporation if actually issued after its formation; that said hotel building was completed and furnished about May, 1926, and thereafter the said hotel building, including its furnishings, was conveyed to appellant and Emil Kehrlein, Jr., and subsequently the said Emil Kehrlein, Jr., conveyed his interest therein to appellant, said conveyances being made subject to the said two deeds of trust; that default was made upon the first mortgage bonds and, agreeably to the provisions of the deed of trust securing them, S. W. Straus & Co. took over the opera-

tion of said hotel and is now in possession of and operating same; that the said Title Guarantee and Trust Company has noticed the said hotel and furnishings for sale and will proceed to sell same under said second deed of trust unless restrained by an order of court.

Appellant alleges in the second count of the complaint that, upon the representations of respondents that the said trust deeds and notes were valid subsisting obligations and liens, she paid about $45,000 for which she has received no consideration.

For a third cause of action she alleges that a controversy exists between her and defendants as to their respective rights under the second deed of trust and notes issued thereunder.

The sole contention of appellant is that the deed of trust and notes secured thereby are void for the reason that no permit authorizing them was ever issued by the commissioner of corporations. The Corporate Securities Act, as it existed in 1925, provided that every security issued by any company, without the permit of the commissioner authorizing the same then in effect, shall be void. (Sec. 12 of said act, Stats. 1917, p. 679.) The word "company" included private corporations, partnerships and individuals. (Sec. 2 of said act.) The word "security", in so far as it applies to individuals, includes all bonds, debentures or evidences of debt offered to the public by an individual. (Sec. 2 of said act.)

Conceding that the second deed of trust and the indebtedness it secured were issued in violation of the Corporate Securities Act, for the reason that no permit therefor was issued by the commissioner of corporations, we have a situation where a cancellation of these instruments is sought, not against the wrongdoer, but against what appears from the complaint to be innocent third parties. It is not alleged in the complaint that the trustee in the second deed of trust or the beneficiaries thereunder had knowledge that it, and the notes it secured, were issued without a permit. In *Pollak* v. *Staunton*, 210 Cal. 656, 662 [293 Pac. 26, 29], the court said: "Where stock has been issued without a permit it is void by the terms of the act (sec. 12), and the purchaser who is ignorant of such unauthorized issue may recover payments made by him on account of the purchase price. [Cit-

ing authorities.] The purchaser, for whose benefit the Corporate Securities Act has been enacted, is not *in pari delicto* with the corporation or its agents. 'Where contracts or transactions are prohibited by positive statutes for the sake of protecting one set of men from another set of men—the one, from their situation and condition being liable to be oppressed or imposed upon by the other—there the parties are not *in pari delicto;* and in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract.' [Citing authorities.]''

Again, in *Hemmeon* v. *Amalgamated C. Mines Co.*, 95 Cal. App. 400 [273 Pac. 74, 75], the court held: ''The trial court found, and it is not denied by appellant, that the respondent had no knowledge of the failure to obtain a permit, but it is argued that she must be presumed to have known the law and that the notes were void; that having failed to demand proof of the existence of a permit, respondent 'passively if not actively became a participant in violating the law.' True, respondent must be presumed to have known the law requiring the possession of a permit as a prerequisite to the issuance and sale of securities, but it does not follow that she should be presumed to have known the *fact* that appellant had violated the law. The statute does not make it an offense innocently to *buy* securities issued without a permit first having been obtained by the seller, nor does it require that it shall be exhibited to the purchaser. Until the contrary appears, it will be presumed that a person is innocent of crime or wrong, and that the law has been obeyed. (Code Civ. Proc., sec. 1963.) Respondent was entitled to assume that the law had been complied with.'' Further along in this case the court said: ''In *Smith* v. *Bach*, 183 Cal. 259 [191 Pac. 14] . . . , the Supreme Court there said: 'There are authorities which, while not denying the general rule that an illegal contract cannot be enforced whether *malum in se* or *malum prohibitum*, hold that all the consequences which attend a contract contrary to public morals do not attend one which is purely *malum prohibitum*, and that in the latter case courts will take notice of the circumstances and will give relief if justice and equity require a restoration of money received by either

party thereunder. (13 Cor. Jur., p. 411, sec. 341.) In such a case the complaining party is protected, the prohibition being for his benefit, and not being *in pari delicto* he is entitled to relief." (*Tatterson* v. *Kehrlein,* 88 Cal. App. 34 [263 Pac. 285].)

In the case now under consideration the respondents are not *in pari delicto* with the parties who caused the securities to be issued without first obtaining a permit so to do. They occupy the position of third parties who have paid value received for the notes secured by the second deed of trust, without notice or knowledge that a permit had not been issued authorizing their issuance. It would be inequitable to penalize respondents for wrongs committed by others.

The judgment is affirmed.